RYSKAMP, District Judge,
dissenting:
This appeal requires examination of the nature of pleading in the post -Twombly era. Prior to Twombly, a complaint was held to the Fed.R.Civ.P. 8(a)(2) notice pleading standard, that is, a complaint needed to contain “a short and plain statement of the claim showing that the pleader is entitled to relief’ such that the defendant received “fair notice of what the ... claim is and the grounds upon which it rests.” Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Twombly recast the standard for specificity in pleading, ruling that a plaintiffs obligation to provide the grounds for his entitlement to relief requires more than “labels and conclusions,” and that a “formulaic recitation of the elements of a cause of action will not do.” Ashcroft v. Iqbal, 556 U.S.-, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)). Courts must first separate factual allegations and legal conclusions and need only accept the factual allegations as true. Iqbal, 129 S.Ct. at 1949. Courts then apply a plausibility standard; the complaint must contain “only enough facts to state a claim for relief that is plausible on its face.” Twombly, 550 U.S. at 570, 127 S.Ct. at 1974. “Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.” Iqbal, 129 S.Ct. at 1950.
The majority goes too far in its application of Tivombly and essentially requires Jacobs to prove his case in his complaint. I cannot join the majority opinion in light of its misapplication of the Twombly standard.
The majority finds Jacobs’s vertical price-fixing claim lacking in part because Jacobs did not sufficiently plead the relevant product market. As the majority notes, the “ ‘market is composed of products that have reasonable interchangeability.’ ” Levine, 72 F.3d at 1552 (quoting du Pont, 351 U.S. at 404, 76 S.Ct. at 1012). Such identification requires knowledge of “producers that provide customers of the defendant firm (or firms) with alternative sources for the defendant’s products or services.” Levine, 72 F.3d at 1552 (quotation omitted). Also according to the majority, actual evidence of cross-elasticity of demand is another factor in evaluating the existence of the submarket. The majority even goes so far as to say that “the broader economic significance of a submarket must be supported by demonstrable empirical evidence.” U.S. Anchor, 7 F.3d at 998 (emphasis added).
Product market analysis is detailed and complicated. That people sleep on both innerspring mattresses and visco-elastic mattresses does not necessarily mean that each of these mattresses belongs in the same product market. All building materials (wood, stone, brick, steel, etc.) are not *1346 all in the same market simply because people use these materials to construct buildings. The relevant market simply cannot be determined on a motion to dismiss.
The demand for “empirical evidence” at this stage of litigation is improper. Requiring “demonstrable empirical evidence” in the complaint carries Twombly too far. Indeed, Twombly itself states that “a complaint ... does not need detailed factual allegations.” 550 U.S. at 555, 127 S.Ct. at 1964. No litigant could have any possibility of alleging a complaint under the majority’s “demonstrable empirical evidence” standard. Evidence is presented at the summary judgment stage or at the trial stage of litigation, not in the pleadings. Notably, Cellophane, on which the district court relied in its product market analysis, was based on a voluminous record contained in several appendices. Jacobs cannot be expected to provide factual allegations of cross-elasticity of demand, or other indications of price sensitivity, absent access to discovery. While Twombly was a sea change in the standards governing pleading in federal court,[1] the majority goes too far when it interprets Twombly to require a plaintiff to include actual evidence in the complaint.
Jacobs alleges that the system by which TPX sold mattresses through authorized distributors and its own website constitutes a horizontal price-fixing conspiracy in that all retailers charged the same price for the same product. The majority notes that two possible inferences derive from the fact that TPX and its distributors charged the same minimum price. The first inference is tacit collusion by TPX and its distributors to set prices. The second inference is that TPX and its distributors set prices independently of each other. Merriam-Webster’s dictionary defines “plausible” as “appearing worthy of belief.” Synonyms for “plausible” include “credible,” “creditable,” “likely,” “believable,” “presumptive” and “probable.” My judicial experience and common sense leads me to conclude that it is entirely plausible that TPX and its distributors colluded to set prices. Indeed, it is totally implausible that TPX and its distributors set prices independently of each other. Horizontal price-fixing is still a per se violation, and this allegation satisfies the plausibility pleading standard: it is entirely plausible that this uniformity in pricing is the result of collusion rather than market forces. Jacobs has a colorable horizontal price fixing claim, and his horizontal price-fixing claim should have been allowed to proceed.
The majority’s judicial experience and common sense leads it to conclude otherwise: it would require Jacobs to provide allegations that TPX and its distributors signaled each other as to how and when to fix prices. When plausibility is based on a judge’s common sense and experience, different judges will have different opinions as to what is plausible, resulting in a totally subjective standard for determining the sufficiency of a complaint. “[I]nconsistent rulings on virtually identical complaints may well be based on individual judges having quite different subjective views of what allegations are plausible.” Arthur R. Miller, From Conley to Iqbal: A Double Play of the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 30 (2010). See also Rajiv Mohan, A Retreat from Decision by Rule in Ashcroft v. Iqbal, 33 Harv.J.L. & Pub. Pol’y 1191, 1197 (2010) (basing the plausibility determination on judicial expe *1347 rience and common sense “suggests that plausibility is not meant to be guided by clear principles, but instead by the wisdom of judges.”). Speaker v. U.S. Dep’t of Health and Human Services Center for Disease Control and Prevention, 623 F.3d 1371 (11th Cir.2010) illustrates this principle. The plaintiff alleged that the United States Department of Health And Human Services Centers For Disease Control and Prevention (“CDC”) disclosed his identity and other confidential medical information relating to the treatment of his tuberculosis. Id. at 1386. The district court granted the CDC’s motion to dismiss, but this court reversed and remanded, ruling that Plaintiffs complaint met the plausibility standard and noting that a plaintiff “need not prove his case on the pleadings” but “merely [needed to] provide enough factual material to raise a reasonable inference, not a possible claim, that the CDC was the source of the disclosures at issue.” Id. at 1386. The plausibility standard is a moving target; two different courts can easily reach different conclusions based on a review of the same pleading. See also Wells v. Willow Lake Estates, Inc., No. 09-14154, 2010 WL 3037808, at *3 (11th Cir. Aug. 5, 2010) (reversing district court dismissal of amended complaint, noting that amended complaint’s “allegations are specific, factual, and plausible .... ”); Waters Edge Living, LLC v. RSUI Indem. Co., 355 Fed.Appx. 318, 323-24 (11th Cir.2009) (finding that the complaint “allow[ed] a reasonable inference” regarding the existence of the settlement agreement and reversing the district court’s dismissal for failure to state a claim for relief).
Yet if Jacobs made the type of allegations the majority seeks and discovery later indicated that those allegations were untrue, Jacobs would be vulnerable to Rule 11 sanctions. Scholars write of “information asymmetry,” which often presents in claims “hinging on the defendant’s state of mind or secret conduct.” Scott Dodson, New Pleading, New Discovery, 109 Mich.L.Rev. 53, 66 (2010). In such instances, “the necessary information relating to issues such as fraud, conspiracy, price-fixing, and corporate governance can be found only in the defendant’s files and computers.” Miller, supra, 45. See also Dodson, supra, 67-68 (noting that plaintiffs who “may have actually suffered cognizable harm” will not necessarily “be able to survive a motion to dismiss without formal discovery” and will be unable “to allege unknown facts in their pleadings without running afoul of the certification provision in Rule 11 .... ”).
I am concerned that the majority confuses the complaint’s factual allegations with legal conclusions. The complaint alleges that “[v]isco-elastic foam mattresses comprise a relevant product market, or sub-market, separate and distinct from the market for mattresses generally, under the federal antitrust laws” and that the alleged price fixing agreements “have unreasonably restrained, do unreasonably restrain, and will continue to unreasonably restrain trade and commerce in the visco-elastic mattress market ... by eliminating price competition.” These allegations could just as well be factual and suitable for trial by jury. See Miller, supra, 24-25 (“the conclusion category is being applied quite extensively, embracing allegations that one might reasonably classify factual and therefore potentially jury triable .... ”).
I am also troubled that the district court dismissed Jacobs’s complaint with prejudice based on case law not yet decided at the time Jacobs filed suit. The complaint was filed on January 5, 2007. Twombly was decided on May 21, 2007, and Leegin was decided on June 28, 2007. Iqbal was not yet decided at the time of oral argument in this court.
*1348 Leegin applied the rule of reason to vertical price-fixing agreements, but Jacobs filed his complaint when the per se rule governed. As the majority notes, evaluation of potential restraints of trade under the rule of reason entails “the fact-finder weighing] all of the circumstances of the case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.” Cont’l T.V., 433 U.S. at 49, 97 S.Ct. at 2557. The court is not a factfinder on a motion to dismiss, however. Under the rule of reason, the uniform pricing could be indicative of an illegal price fixing agreement, but such is not discernable absent discovery. It was an abuse of discretion to deny Jacobs leave to amend in light of the intervening Leegin decision.
Since Twombly also post-dated Jacobs’s complaint, Jacobs could not be expected to conform his pleading to unarticulated standards. Simply put, Jacobs relied on the Rule 8 notice pleading standard when he filed his complaint. The Appendix to the Federal Rules contains several forms that “suffice under these rules and illustrate the simplicity and brevity that these rules contemplate.” Fed.R.Civ.P. 84. Form 11, issued April 30, 2007, i.e., pr e-Twombly, entitled “Complaint for Negligence,” provides that the following is sufficient to allege a claim for negligence:
1. (Statement of Jurisdiction ....).
2. On date, at place, the defendant negligently drove a motor vehicle against the plaintiff.
3. As a result, the plaintiff was physically injured, lost wages or income, suffered physical and mental pain, and incurred medical expenses of $--
Therefore, the plaintiff demands judgment against the defendant for $_, plus costs.
Such a pleading would likely be considered scant under the Twombly standard. Although Jacobs’s motion to amend came after issuance of the final judgment, denial of the motion was an abuse of discretion given that Twombly was not decided when Jacobs filed suit. I am puzzled that the district court would issue a final judgment prior to allowing Jacobs leave to amend his complaint. The sua sponte allowance of leave to amend after dismissal of an initial complaint is standard practice in federal court.
Furthermore, the district court never gave oral argument to the parties. By deciding this case on the pleadings and immediately (the same day) entering final judgment, the district court thwarted Jacobs’s right to amend (since no responsive pleading was filed).
I say nothing as to whether Jacobs’s claims would survive a motion for summary judgment. I merely say that Jacobs should have received leave to amend his complaint in light of Twombly and Leegin and that the majority overreads Twombly as requiring the presentation of evidence at the pleadings stage.

. Many state courts predicated their pleading requirements on the now-overruled Conley standard. It remains to be seen if and how these states will alter their pleading requirements in light of Twombly.